NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDREW E. ARMSTRONG,<br><br>    Plaintiff,<br><br> vs.<br><br>J. CHUDY, et al.,<br><br>    Defendants. | No. C 07-06251 JF (PR)<br><br>ORDER GRANTING MOTION FOR SUMMARY JUDGMENT<br><br><br><br><br><br>(Docket No. 31) |

Plaintiff, a California prisoner proceeding pro se, filed the instant civil rights action pursuant to 42 U.S.C. § 1983 against Correctional Training Facility personnel. The Court found cognizable Plaintiff's claims that Defendants violated his Eighth Amendment rights by acting with deliberate indifference to his serious medical needs, and ordered service on Defendants J. Chudy, I. Grewal, S. Morris and T. Ulanday.[1] Defendants filed a motion for summary judgment on the grounds that there is no genuine issue as to any material fact, and in the alternative, that they are entitled to qualified immunity. (Docket No. 31.) Plaintiff filed opposition to Defendants' summary judgment

---

[1] All claims against defendant B. Curry were dismissed for failure to state a claim. (See Docket No. 8.)

motion, and Defendants filed a reply. After reviewing the complaint and all submitted papers, the Court concludes that Defendants are entitled to summary judgment and will GRANT Defendants' motion.

## DISCUSSION

### I. Standard of Review

Summary judgment is proper where the pleadings, discovery and affidavits show that there is 'no genuine issue as to any material fact and [that] the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A court will grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). A fact is material if it might affect the outcome of the lawsuit under governing law, and a dispute about such a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Generally, the moving party bears the initial burden of identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. See Celotex Corp., 477 U.S. at 323. Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. But on an issue for which the opposing party will have the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." Id. at 325. If the evidence in opposition to the motion is merely colorable, or is not significantly probative, summary judgment may be granted. See Liberty Lobby, 477 U.S. at 249-50.

The burden then shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on

file,' designate 'specific facts showing that there is a genuine issue for trial.'" <u>Celotex Corp.</u>, 477 U.S. at 324 (citations omitted). If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law." <u>Id.</u> at 323.

The court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a disputed material fact. <u>See</u> <u>T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n</u>, 809 F.2d 626, 630 (9th Cir. 1987). The evidence must be viewed in the light most favorable to the nonmoving party, and the inferences to be drawn from the facts must be viewed in a light most favorable to the nonmoving party. <u>See id.</u> at 631. It is not the task of the district court to scour the record in search of a genuine issue of triable fact. <u>Keenan v. Allan</u>, 91 F.3d 1275, 1279 (9th Cir. 1996). The nonmoving party has the burden of identifying with reasonable particularity the evidence that precludes summary judgment. <u>Id.</u> If the nonmoving party fails to do so, the district court may grant summary judgment in favor of the moving party. <u>See id.</u>; <u>see, e.g.</u>, <u>Carmen v. San Francisco Unified Sch. Dist.</u>, 237 F.3d 1026, 1028-29 (9th Cir. 2001).

## II. **Legal Claims and Analysis**

Plaintiff alleges that he has suffered loss of vision in his left eye due to Defendants' failure to provide adequate medical care. Plaintiff claims that Defendants Grewal and Chudy found that he had "dysfunction of left optic nerve," but that their examinations "failed to determine adequately the cause of said dysfunction in a manner which would anc could appropriately recommend proper treatment." (Compl. at 3.) Plaintiff claims that Defendant Ulanday improperly prescribed glaucoma medication although he knew plaintiff did not have glaucoma. (<u>Id.</u>) Plaintiff claims that Defendant Ulanday further failed to "adequately examined [plaintiff] to explain the loss [of] vision." (<u>Id.</u>) Plaintiff claims that Defendant Morris was aware that plaintiff's condition had a thirteen-year history, yet provided "no treatment" and "conservative management." (<u>Id.</u> at 3-4.) Plaintiff alleges that Defendants "failed to obtain professional judgment to adequately and properly assess [his] failing eye sight," denied him access to "medical

1  personnell [*sic*] qualified to exercise judgment with the necessary specialized expertise,"
2  and that they failed to conduct tests which were warranted by his symptoms. (Id.) The
3  Court found that Plaintiff's allegations, liberally construed, stated cognizable claims that
4  Defendants violated his Eighth Amendment rights by acting with deliberate indifference
5  to his serious medical needs.

6        The following facts are undisputed unless otherwise indicated. In a declaration,
7  Defendant Dr. Ulanday, an ophthalmologist at CTF, provides the following testimony
8  regarding optic nerve atrophy: "Optic nerve atrophy is tissue death of the nerve that
9  carries the information regarding sight from eye to brain. There are many unrelated
10 causes of optic atrophy. The most common cause is poor blood flow, called ischemic
11 optic neuropathy, which most often affects the elderly. The optic nerve can also be
12 damaged by shock, various toxic substances, radiation, and trauma. Various eye diseases
13 most commonly glaucoma, can also cause optic nerve atrophy. In addition, the condition
14 can be caused by diseases of the brain and central nervous system, such as cranial
15 arteritis, multiple sclerosis, brain tumor, and stroke. The use of glaucoma medication,
16 such as Xalantan, may be used to reduce pressure inside the eye to increase the patient's
17 comfort." (T. Ulanday Decl. at 2.) He further states that optic nerve atrophy causes
18 dimming of vision and reduction of the field of vision, and that the ability to see fine
19 detail will also be lost. (Id.) The pupil reaction to light will diminish and may eventually
20 be completely lost, and once it has occurred, damage from optic nerve atrophy cannot be
21 reversed. (Id.)

22       According to Plaintiff's medical records at CTF, optic nerve atrophy had been
23 present for many years. Defendant Dr. Ulanday was unable to confirm the cause of
24 Plaintiff's optic atrophy on January 13, 2006, and on March 13, 2006, recommended a
25 trial of glaucoma medication, Xalantan, which is a topical eye medication used to reduce
26 pressure inside the eye and to increase the patient's comfort. (L. Stocker Decl., Ex. A..
27 CDCR Records ("CDCR") 0153, 0183.) On August 18, 2006, Plaintiff reported that the
28 vision in his left eye had been decreasing for five to six years. Plaintiff reported having

Order Granting Motion for Summary Judgment
P:\PRO-SE\SJ.JF\CR.07\Armstrong06251_grant-msj .wpd     4

an MRI for the condition in 2003; he reported no history of head trauma. The cause of the optic nerve atrophy was not confirmed. (CDCR 0175.) On September 4, 2006, another CTF physician made a request at Plaintiff's prompting that Plaintiff be seen by Defendant Dr. Ulanday in light of the diagnosis of left optic nerve atrophy for at least three years of unknown etiology. (CDCR 0200.) There is no record of the response to this request.

On September 21, 2006, Plaintiff was seen by Defendant Dr. I. Grewal, for the First Level Response to Plaintiff's inmate grievance regarding treatment for his left eye. Plaintiff requested that he be given a second opinion by a physician outside the prison. It appears that Defendant Dr. Grewal submitted the request, and on September 25, 2006, the request was granted. (CDCR 0201.) On October 31, 2006, Defendant Dr. J. Chudy, as the Chief Medical Officer at CTF, notified Plaintiff that his request had been granted but advised that it might take several months to get an appointment with an outside consultant. (CDCR 0218.) On February 16, 2007, Defendant Dr. Chudy granted Defendant Dr. Grewal's request to have Plaintiff removed from CTF to obtain a second opinion. (CDCR 0146, 0203.) Other than approving the request for a second opinion, Defendant Dr. Chudy provided no direct medical treatment to Plaintiff with respect to his left eye.

On March 1, 2007, Plaintiff was seen and examined by Dr. Eric Del Piero, an ophthalmologist and retinologist who is not a party to this action. Plaintiff reported gradual decreased vision to his left eye over the prior three years, and that in the prior six months, his vision was going totally dark. Dr. Del Piero confirmed optic nerve atrophy, found no treatment was indicated, and recommended conservative management of Plaintiff's left eye condition. (CDCR 0201, 0202.) Defendants contend that they complied with Dr. Del Piero's recommendation.

Defendant Nurse S. Morris' only involvement in the matter of Plaintiff's left eye was her participation in a Case Conference on October 11, 2007, where she confirmed that on March 1, 2007, Plaintiff had a consultation with Dr. Del Piero. Defendant Morris

was not otherwise involved in the treatment of Plaintiff's left eye.

Deliberate indifference to serious medical needs violates the Eighth Amendment's proscription against cruel and unusual punishment. See Estelle v. Gamble, 429 U.S. 97, 104 (1976); McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds, WMX Technologies, Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc); Jones v. Johnson, 781 F.2d 769, 771 (9th Cir. 1986). A determination of "deliberate indifference" involves an examination of two elements: the seriousness of the prisoner's medical need and the nature of the defendant's response to that need. See McGuckin, 974 F.2d at 1059.

A "serious" medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain." McGuckin, 974 F.2d at 1059 (citing Estelle, 429 U.S. at 104). The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain are examples of indications that a prisoner has a "serious" need for medical treatment. Id. at 1059-60 (citing Wood v. Housewright, 900 F.2d 1332, 1337-41 (9th Cir. 1990)).

A prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it. Farmer v. Brennan, 511 U.S. 825, 837 (1994). The prison official must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but he "must also draw the inference." Id. If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk. Gibson v. County of Washoe, 290 F.3d 1175, 1188 (9th Cir. 2002).

In order for deliberate indifference to be established, therefore, there must be a purposeful act or failure to act on the part of the defendant and resulting harm. See McGuckin, 974 F.2d at 1060; Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d

404, 407 (9th Cir. 1985). A finding that the defendant's activities resulted in "substantial" harm to the prisoner is not necessary, however. Neither a finding that a defendant's actions are egregious nor that they resulted in significant injury to a prisoner is required to establish a violation of the prisoner's federal constitutional rights, McGuckin, 974 F.2d at 1060, 1061 (citing Hudson v. McMillian, 503 U.S. 1, 7-10 (1992) (rejecting "significant injury" requirement and noting that Constitution is violated "whether or not significant injury is evident")), but the existence of serious harm tends to support an inmate's deliberate indifference claims, Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (citing McGuckin, 974 at 1060).

Defendants argue that Plaintiff has failed to show that they acted with deliberate indifference to his serious medical needs. (Mot. at 8.) It is not disputed that Plaintiff's loss of vision presented a serious medical need. However, Defendants contend that they were attentive to Plaintiff's needs and pursued a reasonable evaluative course to determine his medical needs. (Id.) In opposition, Plaintiff merely provides more information about the nature of optic nerve atrophy and repeats his assertions that Defendants failed to adequately examine him and to explain the loss of vision. However, the information Plaintiff attempts to submit regarding optic nerve atrophy appears irrelevant and lacks foundation.

The evidence provided by Defendants shows that optic nerve atrophy can be the result of many unrelated causes, and that unfortunately, once it occurs, the damage from optic nerve atrophy cannot be reversed. (Ulanday Decl. at 2.) Plaintiff has failed to show that either the optic nerve atrophy or the gradual loss of vision was directly caused by an act or failure to act on the part of the named Defendants. The evidence shows that Defendant Dr. Ulanday properly diagnosed Plaintiff's gradual loss of vision as the result of optic nerve atrophy, as confirmed by Dr. Del Piero. Defendant Dr. Ulanday's inability to identify the cause of the atrophy itself does not amount to a constitutional deficiency, considering the many causes for it as discussed above. Furthermore, Plaintiff has failed to provide evidence indicating that Defendant Dr. Ulanday's recommendation for a trial

1 of glaucoma medication, such as Xalantan, was medically unsound as Defendant Dr. Ulanday has testified that the use of such medication is appropriate to reduce pressure inside the eye to increase the patient's comfort. (Id.) Plaintiff has also not alleged that he suffered further harm due to the glaucoma medication.

The record also indicates that Defendant Dr. Grewal responded to Plaintiff's request for outside consultation in a prompt manner, and that he filed for and obtained the appropriate authorization for Plaintiff's removal from prison for the consultation. See *supra* at 5. Defendant Dr. Chudy approved Plaintiff's request for a second opinion, and provided Plaintiff with a timely notice and due warning about the potential delay. Id. Defendant Nurse Morris had no participation in Plaintiff's treatment other than being present at a Case Conference in October 2007, after Plaintiff's consult with Dr. Del Piero. Id. Plaintiff's allegation that Defendant Nurse Morris was aware that plaintiff's condition had a thirteen-year history, yet provided "no treatment" and "conservative management" is unsubstantiated by the record.

Defendants have shown that the record demonstrates the absence of a genuine issue of material fact with respect to Plaintiff's medical claim regarding the treatment for his left eye. In opposition, Plaintiff has failed to identify specific facts showing that there is a genuine issue for trial. Having reviewed the pleadings and all submitted papers on this matter, the Court finds that Plaintiff's allegations do not establish that Defendants acted with deliberate indifference to Plaintiff's serious medical needs in violation of the Eighth Amendment. Accordingly, Defendants are entitled to judgment on these claims as a matter of law. See Celotex Corp., 477 U.S. at 323.[2]

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment, (Docket No. 31), is GRANTED. All claims against Defendants Dr. J. Chudy, Dr. I. Grewal, Nurse

---

[2] Because the Court finds that no constitutional violation occurred, it is not necessary to reach Defendants' qualified immunity argument.

1  S. Morris and Dr. T. Ulanday are DISMISSED with prejudice.

2      All claims against Defendant B. Curry were dismissed in a previous order for
3  failure to state a claim, and this defendant was terminated from this action.  (See Docket
4  No. 8.)

5      This order terminates Docket No. 31.

6      IT IS SO ORDERED.

7  DATED: 3/7/11 _____

                    JEREMY FOGEL
8                     United States District Judge

UNITED STATES DISTRICT COURT

FOR THE

NORTHERN DISTRICT OF CALIFORNIA

ANDREW E. ARMSTRONG,

        Plaintiff,

  v.

J. CHUDY, et al.,

        Defendants.

Case Number: CV07-06251 JF

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on 3/10/11, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Andrew Emil Armstrong H-44225
Correctional Training Facility
PO Box 689
E-135
Soledad, CA 93960-0689

Dated: 3/10/11

                                  Richard W. Wieking, Clerk